UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOANNE A. BAKER, as Personal
Representative of the Estate of PRITI
VASANT SHERE-SHEPHERD, deceased,

      Plaintiff,

v.                           Case No.  6:13-cv-174-Orl-18TBS

DAYNE A. KROUT, MATTHEW ROWE,
CITY OF MAITLAND, JEFFREY
SHUMWAY, ET AL.,

      Defendants.

_____

REPORT AND RECOMMENDATION

On June 6, 2013, the Court deemed Plaintiff's "claims as unwarranted by existing law and therefore frivolous." (Doc. 65 at15.)  The Court dismissed this case against all Defendants with prejudice and referred the matter to me "for a Report and Recommendation as to the propriety of Rule 11 sanctions against Plaintiff Joanne A. Baker." (Id.)  I entered an order to show cause why Rule 11 sanctions should not be imposed, and Plaintiff and her lawyer have filed their response. (Docs. 67, 69-71.)  Plaintiff has also filed notices of settlement and unopposed motions for leave of Court to dismiss this action against all but three of the Defendants with prejudice.  (Docs. 66, 68.)  For the reasons that follow, I respectfully recommend that the Court not impose Rule 11 sanctions against Plaintiff.

I. The Underlying Facts[1]

On February 5, 2011 at approximately 12:58 a.m., a motor vehicle with Florida license plate TOOL420 was allegedly involved in a minor traffic accident with another vehicle near the intersection of Orlando Avenue and Orange Avenue in Winter Park, Florida. This accident allegedly resulted in no injuries. The vehicle and its unidentified driver fled the scene heading westbound on Orange Avenue without providing the driver of the other vehicle with any identifying information.

Approximately thirty minutes later, [Priti Vasant] Shere-Shepherd was driving on Orlando Avenue in Winter Park, Florida heading northbound towards her home in Sanford, Florida in a vehicle bearing Florida license plate TOOL420. Short and Ligon, each officers with the Winter Park Police Department ("WPPD"), observed the vehicle suspected in the earlier hit-and-run accident driving northbound on Orlando Avenue. Ligon activated his emergency equipment while traveling through the intersection of Orlando Avenue and Miller Avenue in an attempt to stop Shere-Shepherd and the suspect vehicle. Although Shere-Shepherd did not stop or make any apparent attempt to stop the vehicle, she allegedly did not make any evasive movements. Shere-Shepherd stopped at a red light at the intersection of Orlando Avenue and Webster Avenue. Ligon approached Shere-Shepherd's vehicle, "rapped on the driver's side window[,] and asked her to exit the vehicle . . . ." However, Shere-Shepherd simply drove away. Ligon advised his communications

_____

[1]These facts are taken verbatim from the Court's Order dismissing Plaintiff's claims with prejudice. (Doc. 65.) Citations to the record and footnotes have been omitted.

center of Shere-Shepherd's actions and requested instruction.  WPPD Sergeant J.

Bologna advised that no officers should engage the vehicle or pursue it further

since the vehicle's license plate number was known and Shere-Shepherd was not

suspected of committing any forcible felony.  Sergeant J. Bologna also advised the

communications center to relay the information to the Maitland Police Department

and the Seminole County Sheriff's Office.

Maitland Police Department Lieutenant Dayne Krout, a shift supervisor, was

driving an unmarked police vehicle northbound on Orlando Avenue when he

observed Ligon activate his emergency equipment and attempt to stop Shere-

Shepherd.  Krout also observed Shere-Shepherd drive away after Ligon

approached Shere-Shepherd's vehicle and ordered her to exit.  Krout allegedly

heard the communication center's radio transmission and began to pursue Shere-

Shepherd into and within the City of Maitland.  Krout did not activate his emergency

lights or provide Shere-Shepherd with any warning of his pursuit and attempt to

stop her.  Shortly after initiating pursuit, Krout made a radio transmission to all

Maitland Police Department officers in vehicles ahead of Shere-Shepherd,

instructing them to deploy tire deflation devices known as "Stop Sticks" to force

Shere-Shepherd's vehicle to stop.  Maitland Police Department Officer Matthew

Rowe deployed Stop Sticks on U.S. 17-92 immediately north of the intersection with

Maitland Avenue and in the path of Sherre-Shepherd's vehicle.  However, [Plaintiff]

alleges that Rowe did not activate his vehicle's emergency lights or deploy flares

prior to deploying the Stop Sticks.  Shere-Shepherd drove her vehicle over the stop

sticks at approximately forty-five miles per hour, resulting in the puncture and deflation of the vehicle's front right and rear tires.

Shere-Shepherd continued driving despite the vehicle's deflated tires.  Krout activated his emergency lights after Shere-Shepherd drove over the Stop Sticks but deactivated his lights once Shere-Shepherd entered Seminole County.  As Shere-Shepherd and Krout approached Seminole County, Krout sent a radio transmission to the Seminole County Sheriff's Office requesting that Seminole County Sheriff's deputies continue to pursue and attempt to apprehend Shere-Shepherd.  Krout then left the pursuit and returned to Winter Park to speak with WPPD officers who had been involved with the investigation.

Shere-Shepherd continued northbound on U.S. 17-92 into the Fern Park area and then into the City of Casselberry, at which point Seminole County Sheriff's Deputies Brown, Williams, Bronson and Casselberry Police Department Officer Shumway and his supervisor, Ball, joined the pursuit.  Shortly thereafter, Longwood Police Department Officer Chenoweth attempted but was unable to position his vehicle ahead of Shere-Shepherd to deploy Stop Sticks in the path of her vehicle.

At 1:38 a.m., officers observed Shere-Shepherd swerving in her vehicle, apparently as a result of the vehicle becoming increasingly difficult to control.  One minute later, pursuing units reported seeing sparks originating form the rear of Shere-Shepherd's vehicle.  At the same time, the Longwood Police Department's on-duty supervisor advised Price, Hernandez and Chenoweth to cease their involvement in the pursuit once Shere-Shepherd drove beyond Longwood's

-4-

northern city limit.  At approximately 1:43 a.m., pursuing units reported seeing "sparks everywhere."  One to two minutes later, Shere-Shepherd lost control of the vehicle and collided with a tree near the intersection of First Street and French Avenue in Sanford, Florida.  Shere-Shepherd's vehicle sustained serious damage and one of its rear tires was on fire.  Immediately thereafter, the communications center contacted the fire department.  At approximately 3:33 a.m., a radio transmission indicated that Shere-Shepherd was deceased.  A WPPD officer brought a witness to the scene of the crash in an attempt to identify Shere-Shepherd as the driver who caused the initial traffic accident on Orange Avenue, but the witness was unable to identify Shere-Shepherd as the driver.  In total, Shere-Shepherd traveled fourteen miles from the time she fled from Ligon in Winter Park.  Shere-Shepherd traveled twelve of those fourteen miles after her vehicle's tires had been punctured and deflated by the Stop Sticks Rowe deployed.

## II. Plaintiff's Response to Order to Show Cause

In Plaintiff's response to the Court's Order to Show Cause and in subsequent affidavits, she stated that she is the paternal grandmother and guardian of Shere-Shepherd's minor child.  (Doc. 70 ¶ 2.)  She brought this action on the child's behalf after she was unable to get answers to all her questions about what happened the night Shere-Shepherd died and out of a sense of obligation to her granddaughter.  (Id., ¶ 3.)  Plaintiff consulted her attorney who advised her that some facts were incomplete, recordings of some radio transmissions had been deleted by the agencies, and some of the agency reports were contradictory.  (Id., ¶¶ 4-5.)  Her

lawyer also told her the facts and circumstances of the case were unique and some were of first impression.  He said the outcome would depend upon difficult determinations regarding the interpretation and application of legal theories and case law.  (Id., ¶ 5.)  Plaintiff believed she had a fiduciary duty to her granddaughter to bring this case and obtain a judicial determination of what happened.  (Id., ¶ 7.)  She represents that she filed this lawsuit in good faith after consulting with her attorney, and that there are no assets in the estate with which to pay a monetary sanction.  (Id., ¶¶ 9, 12.)

Plaintiff's attorney was admitted to the Florida Bar in 1983 and to the Bar of this Court in 1984.  (Doc. 71, ¶ 2.)  He has never been disciplined by any court and has not previously been subject to Rule 11 sanctions.  (Id., ¶ 4.)  Before filing this lawsuit, he performed his own legal research, employed third-party legal researchers, consulted with potential experts on police practices, and discussed theories and strategies with peers.  (Id., ¶ 6)

His theory of the case was that the use of Stop Sticks before the chase began was sufficient to constitute a seizure by physical force.  See Brower v. County of Inyo, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (holding that "it [is] enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.").  He also intended to distinguish Plaintiff's wrongful death claim from the facts of Bryant v. Beary, 766 So.2d 1157, 1160 (Fla. 5th DCA 2000), in which the court ruled an officer engaged in a vehicle chase did not owe a duty to the person he was

-6-

pursuing.  And, he intended to rely on the case of <u>Vasconez v. Hansell</u>, 871 F. Supp. 2d 1339 (M.D. Fla. 2012), which left the door open to the possibility of asserting a Section 1983 claim based upon an alleged "failure to train."  (Doc. 69 at 11-12.)

Plaintiff's lawyer has represented to the Court that he did not find any case law on point which clearly supported or negated his theory of the case concerning the use of Stop Sticks and that he concluded that a judicial ruling was necessary to determine the facts, allocate liabilities and establish Plaintiff's right, if any, to recovery.  (Doc. 71, ¶ 7.)  Counsel attempted to draw a complaint which presented a colorable argument that this case was distinguishable from and not prohibited by existing law.  (<u>Id.</u>)  He also attempted to present reasonable arguments to change the law.  (<u>Id.</u>)

Counsel took this case on a contingent fee and expended over $8,000 in costs for copies, expert fees, third party research, filing fees, investigation and other costs, none of which will be charged to Plaintiff.  (<u>Id.</u>, ¶ 12.)  If this lawsuit had progressed, counsel would have argued that the Court should use a different standard than the one it employed in its Order and, though such an argument may have been novel or zealous, he does not believe it was frivolous.  (Doc. 69 at 11.)

### III. Procedural History

Plaintiff's complaint alleged multiple claims under Section 1983 as well as wrongful death.  (Doc. 1.)  The Court granted Defendants' motions to dismiss, finding that "no construction of the factual allegations would support the causes of

action [Plaintiff] alleges[.]"  (Doc. 65 at 14.)

After her lawsuit was dismissed, Plaintiff settled with Defendants Dayne A. Krout, Mathew Rose, the City of Maitland, Forrest Price, David Hernandez, Derek Chenoweth, the City of Longwood, Jeffrey Shumway, James Ball and the City of Casselberry.  (Docs. 66, 68.)  The Court does not know the terms upon which Plaintiff settled with these Defendants or why she has not settled with the three remaining Defendants.  Now, she seeks leave of Court to voluntarily dismiss her claims, including rights of appeal, against these Defendants with prejudice.  (Id.)

## IV. Legal Standards

Rule 11 gives the Court discretion to impose sanctions when: (1) a party files a pleading that has no reasonable factual basis; (2) the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) the party files a pleading in bad faith for an improper purpose. Massengale v. Ray, 267 F.3d 1298, 1301 (11th Cir. 2001).  "Rule 11 is intended to reduce frivolous claims and to deter costly meritless maneuvers, thereby eliminating delay, and reducing the cost of litigation."  Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte, 141 F.3d 1434, 1448 (11th Cir. 1998) (quoting Pierce v. Commercial Warehouse, 142 F.R.D. 687, 690-691 (M.D. Fla. 1992)).

When a party files a motion for the imposition of Rule 11 sanctions the court employs an objective standard to determine whether the opponent's conduct is reasonable under the circumstances.  Fox v. Acadia State Bank, 937 F.2d 1566,

1569-70 (11th Cir. 1991).  But, when the court sua sponte initiates Rule 11 sanctions, it employs a higher "akin to contempt" standard because the party does not have the protection of the 21 day safe harbor provision found in Rule 11(c)(1)(A).  Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003). It is clear that simple negligence or ignorance of the facts or law, without more, is not "akin to contempt."  Gehl v. Direct Transport, Ltd., No. 6:12-cv-1869-Orl-31DAB, 2013 WL 424300 at *2 (M.D. Fla. Feb. 4, 2013).  "On the other hand, making a knowingly false statement or exhibiting 'deliberate indifference to obvious facts' is akin to contempt and warrants sua sponte Rule 11 sanctions." Id. (quoting Hodge v. Orlando Utilities Com'n, No. 6:09-cv-1059-Orl-19DAB, 2010 WL 376019 at *5 (M.D. Fla. Jan. 25, 2010)[2]).

The Eleventh Circuit has expressly declined to rule on whether the "akin to contempt" standard requires subjective bad faith on the part of a litigant or attorney. Id. at 1255-56; see also McDonald v. Emory Healthcare Eye Center, 391 F. App'x 851, 853 (11th Cir. 2010).  Nevertheless, some courts in this district have interpreted the "akin to contempt" standard to require a showing of bad faith.  Gehl, 2013 WL 424300 at *1; Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC, No. 3:10-cv-978-J-37JBT, 2011 WL 7030963 at *3 (M.D. Fla. Nov. 10, 2011); Hodge, 2010 WL 376019 at *4.

To hold a party in civil contempt, a court must make a finding of "willful

---

[2] Gehl attributes this quote to Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1294 (11th Cir. 2002). However, this quote is not found in Riccard, but is found in Hodge.  See Hodge, 2010 WL 376019 at *5.

disregard" of the court's order by a showing of clear and convincing evidence. Georgia Power Co. v. N.L.R.B., 484 F.3d 1288, 1291 (11th Cir. 2007).  A finding of "bad faith" requires a showing of dishonesty of belief or purpose.  Black's Law Dictionary, (9th ed. 2009).  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.  A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."  In re Walker, 532 F.3d 1304, 1309 (11th Cir. 2008) (quoting Byrne v. Nezhat, 261 F.3d 1075, 1121 (11th Cir. 2001));  Hodge, 2010 WL 376019 at *6 (finding "akin to contempt" to equate to subjective bad faith and defining bad faith as "making a knowingly false statement or exhibiting a deliberate indifference to obvious facts  . . .").

        If the Court decides to impose sanctions, then it considers the following factors in determining what is appropriate:

> (1) [w]hether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of activity or an isolated event (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in time or expense; (7) whether the responsible person is trained in the law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants.

Thomas v. Early Cnty., Ga., No. 12-12910, 2013 WL 1798338 at *1 (11th Cir. Apr. 29, 2013) (internal quotations omitted) (citing Fed. R. Civ. P. 11, advisory

committee notes (1993 amendments)).

## V. Analysis

The Court has already made a finding that Plaintiff's claims were frivolous. The remaining issue is whether Plaintiff's action in filing her complaint was "akin to contempt."   There is no evidence to rebut the assertions by Plaintiff that she filed this lawsuit out of a sense of duty to her granddaughter and after receiving the advice of counsel.  There is also no evidence that Plaintiff acted dishonestly, recklessly, or for any improper purpose.  Therefore, I respectfully submit that the Court cannot conclude that Plaintiff's filing of this case was akin to contempt.

The Court referred this case to me for a report and recommendations concerning the imposition of sanctions against Plaintiff.  Nonetheless, her attorney has also defended his actions in response to the order to show cause.  The record shows that before filing suit he investigated the facts, researched the law, talked to experts on police practices, and discussed the case with other lawyers.  He understood his theory of the case was novel and zealous, but believed in good faith belief that it was not frivolous.   Accordingly, I  also respectfully submit that the Court cannot conclude that counsel's actions were akin to contempt.  Thus, regardless of whether the "akin to contempt" standard requires a showing of subjective bad faith or something less, I find that neither Plaintiff's conduct nor the conduct of her lawyer is sanctionable under Rule 11.

Plaintiff is moving the Court for leave to dismiss her claims against the settling Defendants with prejudice.  Because the Court has already dismissed this

case with prejudice, there is nothing left for Plaintiff to voluntarily dismiss.

Therefore, I recommend that the Court deny these motions.

VI. Recommendation

In view of the foregoing, it is respectfully RECOMMENDED that the Court:

(1) not impose Rule 11 sanctions against Plaintiff or her lawyer;

(2) deny both of Plaintiff's motions for leave to file voluntary dismissals with prejudice; and

(3) direct the Clerk of Court to close the case file.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

IN CHAMBERS in Orlando, Florida, on July 18, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

        Presiding United States District Judge
        Counsel of Record